FILED

2016 Sep-02  AM 11:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **LORETTA JOHNSON and RAY JOHNSON,** } } } | |
| **Plaintiffs,** } } | |
| **v.** } } | **Case No.:  5:14-cv-02037-MHH** |
| **LOGAN'S ROADHOUSE, INC.,** } } | |
| **Defendant.** | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Loretta Johnson sued defendant Logan's Roadhouse, Inc. after she slipped and fell in the women's restroom at a Logan's Roadhouse restaurant.  Ms. Johnson asserts claims against Logan's Roadhouse for negligence and wantonness. Pursuant to Federal Rule of Civil Procedure 56, Logan's Roadhouse has asked the Court to enter judgment in its favor on both of Ms. Johnson's claims.  (Doc. 22). For the reasons stated below, the Court grants in part and denies in part the motion for summary judgment.

### I.  STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To demonstrate that there is a genuine

dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). When considering a summary judgment motion, the Court must view the evidence in the record and draw reasonable inferences in the light most favorable to the non-moving party. *White v. Beltram Edge Tool Supply, Inc*., 789 F.3d 1188, 1191 (11th Cir. 2015). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## II. FACTUAL AND PROCEDURAL BACKGROUND

The evidence, viewed in the light most favorable to Ms. Johnson, reveals that on September 24, 2012, she went to the Logan's Roadhouse restaurant in Huntsville, Alabama to meet friends. (Doc. 32-1, pp. 34-35). While she was at the restaurant, Ms. Johnson went to the women's restroom. (Doc. 32-1, p. 35). She was walking with the assistance of a cane. (Doc. 32-1, p. 36).[1]

---

[1] Ms. Johnson was walking with the assistance of a cane because in 2007, she injured her right knee, and she had knee replacement surgery. (Doc. 32-1, p. 9). As a result of the knee replacement surgery, Ms. Johnson developed reflex sympathetic dystrophy, which causes severe pain in her right leg. (Doc. 32-1, pp. 7, 10). In 2011, Ms. Johnson tore the meniscus in her left knee, which required arthroscopic surgery. (Doc. 32-1, p. 24).

When she reached the restroom door, she held her cane in her right hand and used her left hand to push the door open.  (Doc. 32-1, p. 38).  Ms. Johnson took two steps into the restroom and allowed the door to begin closing behind her.  (Doc. 32-1, pp. 40-41).  Ms. Johnson reports that as she took her third step, her cane slipped because the bathroom floor was flooded with water.  (Doc. 32-1, pp. 40-41).  Ms. Johnson did not fall to the ground, but her cane and her right foot slipped forward.  (Doc. 32-1, pp. 47-49).  Ms. Johnson stabilized herself with her left leg and was able to prevent herself from landing in the water.  (Doc. 32-1, pp. 47-49).  Ms. Johnson heard a popping sound and then felt pain in her shoulder and her right hip.  (Doc. 32-1, p. 47).  Although there was another woman in one of the restroom's stalls when Ms. Johnson slipped (Doc. 32-1, p. 43), no one witnessed the incident.

At the time of the incident, there was between a quarter-inch and a half-inch of water covering the restroom floor.  (Doc. 32-1, p. 42).  According to Ms. Johnson, the water "came over the sole" of her "Ugg" boots, and she "had to slosh to walk through" the water.  (Doc. 32-1, pp. 34, 42).  Although nothing obstructed Ms. Johnson's view of the water, she did not notice the water until she slipped.  (Doc. 32-1, pp. 42-43).  Ms. Johnson testified in her deposition that she would have seen the water immediately if she had looked down when she opened the

restroom door.  (Doc. 32-1, p. 43).  The water on the restroom floor was clear; it did not appear to contain sewage.  (Doc. 32-1, pp. 43-44).

When Ms. Johnson fell, there was an orange, three-foot-tall "wet floor" sign in the middle of the restroom floor near the stalls.  (Doc. 32-1, p. 50).[2]  Ms. Johnson testified that once she was completely inside of the restroom, nothing obstructed her view of the warning sign.  (Doc. 32-1, pp. 67-68).  It is unclear whether Ms. Johnson could see the warning sign before she slipped.

After Ms. Johnson slipped, she used the restroom, "sloshed through the water," and washed her hands.  (Doc. 32-1, pp. 43, 49-50).  Ms. Johnson then left the restroom and spoke to the restaurant's host.  (Doc. 32-1, p. 51).  As the host walked Ms. Johnson to a table, Ms. Johnson told the host what happened and asked to speak to a manager.  (Doc. 32-1, p. 51).  A manager came to Ms. Johnson's table, and Ms. Johnson explained what happened and told the manger that she "was hurting."  (Doc. 32-1, p. 51).  A little later, the manager came back to Ms. Johnson's table and told Ms. Johnson that she used towels to dry off the restroom

---

[2] The parties offer conflicting evidence about the location of the wet floor sign.  Ms. Johnson testified that the sign was inside of the restroom.  (Doc. 32-1, p. 50).  The defendant's corporate representative testified that the sign was just outside of the restroom.  (Doc. 32-2, p. 21) ("There was a wet floor sign outside of the restroom. . . . [T]he way that the bathroom is designed, when you walk in, there's an air drier right there and a hand sink not far from it.  We chose to put the wet floor sign in front of the door.  There's more space, you see it right away, versus on the inside where it would get hit, you could move it with the -- with the door the way that door opened.  There's no space right there.").

floor.  (Doc. 32-1, pp. 51-52).  While at the restaurant, Ms. Johnson did not ask for medical care or treatment.  (Doc. 32-1, p. 58).

Several days later, Ms. Johnson called the restaurant and spoke to the restaurant's general manager, Randall Yarbrough.  (Doc. 32-1, p. 57).  Mr. Yarbrough told Ms. Johnson that one of the toilets in the women's restroom had to be replaced.  (Doc. 32-1, p. 59).

Logan's Roadhouse restaurants have an inspection policy that requires restaurant employees to inspect the restrooms every 15 minutes.  (Doc. 32-2, pp. 63-64).  Pursuant to this policy, restaurant employees use a checklist to ensure that the floors are clean, the counters are dry, and the toilet paper is stocked.  (Doc. 32-2, p. 64).

Before this incident, Ms. Johnson had visited the Logan's restaurant in Huntsville many times.  (Doc. 32-1, p. 33).  Ms. Johnson did not have difficulties during her previous visits.  (Doc. 32-1, p. 33).

On September 23, 2014, Ms. Johnson filed a complaint against Logan's Roadhouse in the Circuit Court of Madison County, Alabama.  In the complaint, Ms. Johnson asserts claims for negligence, gross negligence, and wantonness.  (Doc. 1-1).[3]  Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Logan's

---

[3] Ms. Johnson's husband, Ray Johnson, also asserted a loss of consortium claim against Logan's Roadhouse.  After Mr. Johnson filed a motion for voluntarily dismissal (Doc. 13), the Court dismissed Mr. Johnson's claim against Logan's without prejudice (Doc. 14).

Roadhouse asks the Court to enter judgment in its favor on all of Ms. Johnson's claims.  (Docs. 22, 23).  The parties have fully briefed the summary judgment motion.  (Docs. 26, 29).  In addition to her brief, Ms. Johnson filed an affidavit in opposition to the summary judgment motion.  (Doc. 27-1).  Logan's has filed a motion to strike that affidavit.  (Doc. 30).  On this record, the Court considers the motion to strike and the motion for summary judgment.

## III.   DISCUSSION

### A. Motion to Strike

Logan's Roadhouse urges the Court to strike Ms. Johnson's affidavit from the summary judgment record because Logan's believes that some of the information that Ms. Johnson provided in her affidavit contradicts testimony that Ms. Johnson gave under oath during her deposition.  "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Associates, Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).

Logan's contends that Ms. Johnson has taken inconsistent positions about the point at which she saw the water on the floor of the women's restroom.  (Doc. 30, pp. 1-2).  During her deposition, Ms. Johnson testified that as she pushed the

restroom door inward to open it, she took two steps into the restroom and slipped as she began to release the door and take her third step.  (Doc. 32-1, pp. 40-42).  Ms. Johnson also testified that nothing was obstructing her view of the water, and if she had looked down as she opened the restroom door, she would have seen the water on the floor.  (Doc. 32-1, pp. 43, 50).  In her affidavit, Ms. Johnson stated:

> As I entered through the door, I placed my cane in front of me and used it to help me move into the restroom.  At the same time that I placed weight on the cane, I saw water on the floor and the cane slipped.
>
> I did not have any opportunity to see the water before my cane slipped.
>
> After I slipped, I could see that standing clear water covered the floor.

(Doc. 27-1, ¶¶ 4-6).

Although the Court can envision ways to reconcile Ms. Johnson's affidavit and her deposition testimony, the Court does not need to reach the issue because the Court relies on other evidence to deny Logan's Restaurant's summary judgment motion on Ms. Johnson's negligence claim.   Therefore, Logan's Restaurant's motion to strike is moot.[4]

---

[4] In its motion to strike, Logan's Roadhouse also expresses concern about Ms. Johnson's testimony concerning statements that Mr. Yarbrough, the restaurant manager, made to her about a faulty toilet in the women's restroom.  *Compare* Doc. 24-1, p. 32 *and* Doc. 27-1, pp. 2-3, ¶ 9. In assessing Logan's motion for summary judgment, the Court did not consider this evidence.

**B. Motion for Summary Judgment**

**1. Negligence**

"In [a] premises-liability case, the elements of negligence are the same as those in any tort litigation: duty, breach of duty, cause in fact, proximate or legal cause, and damages." *Sessions v. Nonnenmann*, 842 So. 2d 649, 651 (Ala. 2002) (quoting *Ex parte Harold L. Martine Distrib. Co.*, 769 So. 2d 313, 314 (Ala. 2000)) (internal quotation marks omitted).[5]  The duty of a premises owner to an injured person depends on the status of the injured person in relation to the owner's property. *Galaxy Cable, Inc. v. Davis*, 58 So. 3d 93, 98 (Ala. 2010).  In this case, Ms. Johnson was a business invitee when she fell at the restaurant.  *See Jones Food Co. v. Shipman*, 981 So. 2d 355, 361 (Ala. 2006) ("Under Alabama law, a person invited onto another's premises for commercial purposes is an invitee.") (citing *Ex parte Mountain Top Indoor Flea Market, Inc.*, 699 So. 2d 158, 161 (Ala. 1997)).

"[A] landowner owes an invitee the duty to keep the premises in a reasonably safe condition and, if the premises are unsafe, to warn of hidden defects and dangers that are known to the landowner but that are hidden or unknown to the invitee." *Galaxy Cable*, 58 So. 3d at 98.  "The entire basis of an invitor's liability rests upon his superior knowledge of the danger that causes the invitee's injuries.

---

[5] The parties do not dispute that Alabama law governs Ms. Johnson's tort claims.  Their position is consistent with Alabama's place of injury rule.

If that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable." *Sessions*, 842 So. 2d at 652.

### a. Duty to Warn

It is well-settled that a wet floor inside a place of business like a restaurant constitutes an unsafe condition for the business's customers. *See, e.g.*, *Terrell v. Warehouse Groceries*, 364 So. 2d 675, 676 (Ala. 1978). Logan's argues that Ms. Johnson's negligence claim fails as a matter of law because the water on the restroom floor was open and obvious, and therefore, Logan's did not have a duty to warn Ms. Johnson of the standing water in its bathroom. (Doc. 23, pp. 14-17).

"[T]he owner of premises has no duty to warn an invitee of open and obvious defects in the premises which the invitee is aware of, or should be aware of, in the exercise of reasonable care on the invitee's part." *Dolgencorp, Inc. v. Taylor*, 28 So. 3d 737, 742 (Ala. 2009) (quoting *Mountain Top Indoor Flea Market*, 699 So. 2d at 161) (internal quotation marks omitted). In other words, proof of an open and obvious hazard negates an invitor's duty to warn an invitee of the hazard. *See Sessions*, 842 So. 2d at 652. Courts use an objective standard to assess whether a hazard is open and obvious. *See Dolgencorp*, 28 So. 3d at 741-42 (noting that the question is whether the invitee should have observed the hazard, not whether the invitee actually appreciated it). "[E]ach case must be examined in light of its particular circumstances." *See Gray v. Mobile Greyhound Park, Ltd.*,

370 So. 2d 1384, 1389 (Ala. 1979) (quoting *Terrell v. Warehouse Groceries*, 364 So. 2d 675, 677 (Ala. 1978) (internal quotation marks omitted)).  Thus, the Court must determine whether an objectively reasonable person in Ms. Johnson's circumstances would have noticed and appreciated the dangerousness of the water on the restaurant's restroom floor.

The material facts concerning the water on the restroom floor are these:  Ms. Johnson testified that there was between a quarter-inch to a half-inch of water covering the restroom floor, that the water came over the sole of her boots, and that she had to "slosh" through the water.  Additionally, Ms. Johnson testified that she took between two and three steps into the restroom before she slipped.  (Doc. 32-1, pp. 40-41).  The record does not indicate how quickly Ms. Johnson entered the restroom or how much time transpired between her first and third step.  More importantly, the record does not indicate whether the bottom of the restroom door was low enough to move the water on the floor as the door opened, such that the water would have been concealed from view until a person was fully inside the restroom, beyond the door.  Without knowing these facts, the Court cannot find as a matter of law that an objectively reasonable person would have seen and appreciated the danger that the water on the bathroom floor presented.  *See Ex parte Kraatz*, 775 So. 2d 801, 804 (Ala. 2000) ("Questions of openness and obviousness of a defect or danger and of an [invitee's] knowledge are generally not

10

to be resolved on a motion for summary judgment.") (quoting *Harding v. Pierce Hardy Real Estate*, 628 So. 2d 461, 463 (Ala. 1993) (internal quotation marks omitted)); *see also Kraatz*, 775 So. 2d at 804 ("The variable factors which make openness-and-obviousness under partial or poor light conditions a fact question not appropriate for resolution by summary judgment are direction, level, color, diffusion, shadows, and like qualities of light, as well as the other physical features of the scene.").

Logan's cites *Sheikh v. Lakeshore Foundation*, 64 So. 3d 1055 (Ala. Civ. App. 2010), to support its contention that water at a depth of between a quarter-inch and a half-inch covering a restroom floor would be obvious to an objectively reasonable person.   The plaintiff in *Sheikh* "was exercising at Lakeshore's [physical rehabilitation] facility when he tripped over some cables on the floor and, as a result, was injured." *Id.* at 1057.  "The cables were approximately three inches above the floor and were being used to connect a wheelchair containing another person who was also exercising to an exercise machine." *Id.*  The plaintiff asserted a premises liability claim against the Lakeshore Foundation.

The trial court found that the hazard that the cables presented was open and obvious as a matter of law, and the Alabama Court of Civil Appeals affirmed the trial court's decision.  In doing so, the Court of Civil Appeals noted that the plaintiff had exercised at the rehabilitation facility nearly 500 times over a period

of four years, Lakeshore routinely connected wheelchairs to exercise machines with cables, and the color of the cables contrasted distinctively with the color of the underlying carpet. *Id.* at 1060. Additionally, the Court of Civil Appeals stated that "a person utilizing an exercise facility is on notice to watch his or her path of travel because[]. . . there are many potential small hazards below eye level inherently present at an exercise facility that may be present in his or her path." *Id.* at 1062.

There are several significant distinctions between the facts in the instant case and those in *Sheikh*. First, nothing in the record suggests that Logan's had a routine practice of flooding its restroom floors such that its customers would be on notice that water might be standing on the bathroom floor. To the contrary, Logan's had a policy that required employees to inspect the bathrooms every 15 minutes, presumably for customer safety and comfort. (Doc. 32-2, pp. 63-64). Second, the water on the restroom floor was clear and, thus, did not stand out like the cables in *Sheikh*. Third, a person walking into a public restroom is not expected to pay as much attention to her path of travel as is a person walking through a gym, because while a person might reasonably expect to find a few drops of water on the basin counter and on the floor in a public restroom, a full half-inch of water is not inherently present on public restroom floors. Therefore, a factfinder

12

must determine whether the water on the restroom floor at Logan's was open and obvious.

### b. Knowledge of Hazard

Logan's alternatively contends that it did not have a duty to warn Ms. Johnson because Ms. Johnson has not established that Logan's either knew or should have known of the water on the restroom floor. (Doc. 23, pp. 19-22). To establish that Logan's had a duty to warn Ms. Johnson of the water on the restroom floor, Ms. Johnson must prove that Logan's had actual or constructive notice of the dangerous condition. *See Maddox By and Through Maddox v. K-Mart Corp.*, 565 So. 2d 14, 16 (Ala. 1990). Specifically, Ms. Johnson must prove:

> (1) that the substance slipped upon had been on the floor a sufficient length of time to impute constructive notice to [Logan's]; or (2) that [Logan's] had actual notice that the substance was on the floor; or (3) that [Logan's] was delinquent in not discovering and removing the substance.

*See Dunklin v. Winn-Dixie of Montgomery, Inc.*, 595 So. 2d 463, 464 (Ala. 1992).

Although there is no evidence that Logan's was aware of the quantity of water on the floor of the women's restroom when Ms. Johnson slipped, the fact that Logan's placed a wet floor sign in or around the restroom demonstrates that Logan's was aware of at least some water on the restroom floor. Additionally, the defendant's corporate representative testified that Logan's did not continuously display a wet floor sign in or around the restrooms. (Doc. 32-2, p. 66). This

evidence permits a reasonable inference that a Logan's employee learned that the floor was wet and then displayed the warning sign.  Therefore, there is sufficient evidence to allow a factfinder to determine whether Logan's had actual notice of the hazardous condition at issue.

### c. Breach of Duty

Logan's also asserts that "to the extent that any duty to warn arose, Logan's satisfied that duty."  (Doc. 23, pp. 17-19).  In other words, Logan's asserts that it did not breach the duty to warn Ms. Johnson of the water on its restroom floor. Although Logan's attempted to warn its customers of a wet floor by displaying a wet floor sign, the exact placement of the sign and the extent to which it effectively warned customers of the wet floor in the women's restroom is disputed. Additionally, the question of whether a defendant breached a duty of care generally is a question of fact to be resolved by a jury.  *See Jones Food*, 981 So. 2d at 361. Therefore, the Court declines to find as a matter of law that Logan's did not breach its duty to warn Ms. Johnson of the water on its restroom floor.

### 2. Wantonness

Under Alabama law, wantonness is defined as "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result."  *See Alfa Mut. Ins. Co. v. Roush*, 723 So. 2d 1250, 1256 (Ala.

1998).  Nothing in the record suggests that Logan's or its employees consciously acted or failed to act with knowledge that injury was likely to occur.  The record demonstrates that Logan's placed a wet floor sign either in the restroom or immediately outside of the restroom.  There is no evidence that someone consciously placed the sign in a location in which it was difficult to see. Therefore, Logan's is entitled to summary judgment on Ms. Johnson's wantonness claim.

## IV.    CONCLUSION

For the reasons discussed above, the Court (1) DENIES as moot the defendant's motion to strike, (2) DENIES the defendant's motion for summary judgment with respect to Ms. Johnson's negligence claim, and (3) GRANTS the defendant's motion for summary judgment with respect to Ms. Johnson's wantonness claim.  The Court DISMISSES WITH PREJUDICE Ms. Johnson's wantonness claim and asks the Clerk to please term Docs. 22 and 30.

**DONE** and **ORDERED** this September 2, 2016.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE